IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MICHAEL ANDERSON
     Petitioner,

v.                             Case No.  5:03cv257/MMP/EMT

AL SOLOMON, Warden
     Respondent.
_____

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer (Doc. 6), and Petitioner replied (Doc. 12).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that an evidentiary hearing is not required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief, and that the petition is without merit and should be denied.

I.      BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a state inmate currently incarcerated at Apalachee Correctional Institution (hereinafter "ACI").  He challenges a prison disciplinary report (hereinafter "DR") he received at ACI in July of 2002, and seeks expungement of the DR from his inmate records and restoration of 30 days of gain time (Doc. 1 at 11).[1]  Petitioner states he challenged the DR by filing a timely petition for writ of mandamus in the Circuit Court in and for Jackson County, Florida, but the state

_____

[1]On July 23, 2002, Petitioner was convicted of Disobeying an Order which occurred on July 15, 2002 (Doc. 6, Appxs. 1, 5).

court denied the petition (*id*. at 2; *see also* Doc. 6 at 3). Petitioner sought certiorari review by the Florida First District Court of Appeal, but review was denied on August 5, 2003 (*id*.). Respondent concedes Petitioner exhausted all administrative and state court remedies (Doc. 6 at 3).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[2] The appropriate test in habeas cases was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and --except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-1523). The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125 (2000).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003); Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Although Williams set forth the Supreme Court's interpretation of § 2254(d)(1), not § 2254(d)(2), the Court subsequently enunciated the § 2254(d)(2) standard:

Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2); *see also* Williams, 529 U.S. at 399, 120 S.Ct. 1495 (opinion of O'CONNOR, J.).

Miller-El, 537 U.S. 322, 123 S.Ct. at 1041 (dicta).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002); Fugate, 261 F.3d 1206. First, the court

must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate, 261 F.3d at 1216 (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404-04.  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must go to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority."  Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and Petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Id. (citing and quoting Williams, 529 U.S. at 406).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).  A state court's incorrect application of clearly

established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n. 4 (11th Cir. 2002).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

Petitioner claims he was denied due process in a prison disciplinary proceeding when he was convicted of Disobeying an Order. He asserts the following specific grounds: (1) the investigating officer failed to initiate an investigation of the charge within twenty-four hours of the writing of the DR, (2) the notice of charge did not adequately notify him of the nature of the charge, (3) the investigating officer failed to adequately interview Plaintiff's witnesses, (4) the decision of the disciplinary team did not contain an adequate written statement of the evidence relied upon to convict Petitioner, and there was insufficient evidence to support the conviction, and (5) the decision of the disciplinary team failed to state the reason for the type of disciplinary action taken (Doc. 1). Respondent contends the record conclusively demonstrates that the disciplinary proceedings met all applicable constitutional procedural requirements; thus, the petition should be denied (Doc. 6).

A.    Clearly Established Supreme Court Law

Where a prison disciplinary hearing may result in the loss of good time credits, the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), held that the inmate must receive: (1) written notice of the charges brought against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. Id., 418 U.S. at 564-66, 94 S.Ct. at 2979. In a subsequent case, the Supreme Court addressed the quantum of evidence necessary to support the factfinder's decision. In Superintendent, Mass.

Correctional Inst. v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) (citations omitted), the Court held: "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record."  The court further explained:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id., 472 U.S. at 455, 105 S.Ct. at 2774 (citations omitted).

   B.  Federal Review of State Court Decision

   Petitioner raised his claims in a mandamus proceeding in the state court (see Doc. 16, Ex. A).  The state court made the following factual findings: (1) the investigation began within twenty-four hours, as required by Rule 33-601.305 of the Florida Administrative Code; (2) the disciplinary team's decision was based on the evidence presented at the hearing, and (3) the disciplinary team gave the reason for the disciplinary action taken (see Doc. 16, Ex. B).  Additionally, the state court concluded the following on purely legal questions and mixed questions of law and fact:  (1) although the investigating officer waited seven days to interview Petitioner, there is no law or rule mandating the time period within which an inmate must be interviewed; (2) Petitioner's witnesses were properly interviewed; (3) the notice of charge was constitutionally sufficient; (4) the conviction was based on constitutionally sufficient evidence (id.).

   Initially, Petitioner has failed to rebut the state court's factual findings by clear and convincing evidence, therefore, they are presumed correct.  Furthermore, the state court applied Hill and Wolff in analyzing Petitioner's claims (see Doc. 16, Ex. B);[3] therefore, Petitioner is entitled to federal habeas relief only if he demonstrates the state court decision was objectively unreasonable.

   The record shows that on July 22, 2002 at 2:06 p.m., a charging document was delivered to Petitioner notifying him that Officer Susan Tyus wrote the following disciplinary report on July 15, 2002:

---

[3]The state court expressly cited Hill and Whitford v. Boglino, 63 F.3d 527, 534 (7th Cir. 1995), a Seventh Circuit case which cited Wolff (see Doc. 16, Ex. B at 1-2).

On July 15, 2002 at approximately 2:30 p.m. while supervising inmates on the field force squad south of highway 90 in the pea field I, Officer Tyus, gave Inmate Anderson, Michael DC # 817928 a verbal order to get his water and move up in line.  Inmate Anderson continued to stay at the water cooler after being given a second verbal order to move.  The sergeant and shift OIC [officer in command] was notified [sic] Inmate Anderson's failure to comply with my orders and I was instructed to submit this report.  Inmate Anderson remains in general population pending this report

(Doc. 6, Appx. 1, Charging Disciplinary Report #102-020668).  The record additionally shows that two correctional officers investigated the incident by interviewing Officer Tyus, interviewing Petitioner, who apparently refused to give his version of the incident, and obtaining written statements from eight witnesses identified by Petitioner, specifically, inmates Michael Daniel, Jason Jenkins, James Scarborough, Joseph Odell, David Fewax, David Gray, Mark Padilla, and Cedrick Brown (Doc. 6, Composite. Appx. 4).  Two witnesses identified by Plaintiff, specifically, J.D. Butler and William Carroll, refused to provide written statements (*id*.).

A disciplinary hearing was held on July 23, 2002 (*id.*, App. 5).  Petitioner was present; he was offered staff assistance and declined;  and he entered a plea of not guilty (*id*.).  The disciplinary team issued a written decision finding Petitioner guilty "based on Officer Tyus' statement in section 1 that she gave Inmate Anderson two direct orders to move up in line and get water.  He continued to stay at the water cooler and failed to comply with her order" (*id*.).

1.  Failure to initiate investigation within twenty-fours hours of infraction

Petitioner contends he was denied due process because the investigating officer failed to comply with an administrative rule of the Florida Department of Corrections (DOC) which provides that the investigating officer shall initiate the investigation of an infraction within twenty-fours hours of the writing of the disciplinary report.  In his reply to Respondent's answer, Petitioner concedes that under Wolff he had no procedural due process right to an investigation within twenty-four hours; however, he argues the DOC's failure to do so constituted a violation of his substantive due process rights (*see* Doc. 12 at 2-6).

As a general rule, to prevail on a claim of a substantive due process violation, Petitioner must prove that Respondent's conduct "shocks the conscience."  *See* Rochin v. California, 342 U.S. 165,

172, 72 S.Ct. 205, 209-10, 96 L.Ed. 183 (1952).  In the instant case, the state court found that the investigation began within twenty-four hours of the writing of the disciplinary report, in compliance with Rule 33-601.305 of the DOC regulations.  Petitioner has failed to show by clear and convincing evidence that this finding was incorrect; therefore, he is not entitled to relief on this claim.  Furthermore, even if this Court concluded that Petitioner established by clear and convincing evidence that the DOC initiated its investigation one week after the infraction, this conduct does not "shock the conscience" in the constitutional sense.  Therefore, the state court denial of his claim was not an unreasonable application of Supreme Court law.

> 2.    Failure to provide sufficient notice of charge

Petitioner alleges he did not receive constitutionally sufficient notice of the charge against him because the written notice of charge did not clearly delineate the verbal order that he disobeyed.  He states he understood he was being charged with disobeying a verbal order to get only one cup of water.

The notice of charge stated Petitioner was being charged with Disobeying an Order based upon the following conduct:

> On July 15, 2002, at approximately 2:30 PM while supervising inmates on the field force squad south of highway 90 in the pea field, I, Officer Tyus, gave Inmate Anderson, Michael DC # 817928 a verbal order to get his water and move up in line.  Inmate Anderson continued to stay at the water cooler after being given a second verbal order to move.

(Doc. 6, Appx. 1).  This notice sufficiently apprised Petitioner of the infraction with which he was charged and the underlying conduct on which the charge was based, specifically, his failure to move after being ordered to do so.  This notice was sufficient to fulfill the notice requirement under Wolff; thus, the state court's denial of the claim was not contrary to or an unreasonable application of Supreme Court law.

> 3.    Failure to adequately interview witnesses

Petitioner contends the investigating officer delegated her investigative duties, in violation of DOC regulations.  He further contends the correctional officer who obtained written statements from Petitioner's witnesses "harassed and/or hurried" the witnesses while they were writing their statements.  Petitioner states that on July 23, 2002, while he and other inmates of the "field force squad" were working in the woods, Sgt. Basford, one of the investigating officers, drove up in a

truck (Doc. 1 at 6).  Sgt. McClamma, the supervising officer, instructed the inmates to stop working and called the names of the inmates who Petitioner listed as witness (*id.*).  Petitioner asserts Officer Tyus, the officer who wrote the DR, was standing approximately ten yards from the truck, and Officer Johnson, a field force supervisor, was standing approximately twenty-five feet from the truck, looking at the witnesses and nodding his head up and down stating, "huh, huh" (*id.* at 7).  As each inmate was summoned the hood of the Basford's truck to write a statement, the inmate was told to "write 4 or 5 words, not a book" (*id.*).  Petitioner claims inmates Scarborough, Brown, Jenkins, and Daniel were "harassed and intimidated" to write short statements (*id.*).

In support of his claim, Petitioner submitted statements from these inmates in both state court and the instant federal action (*see* Doc. 1, Ex. C).  In Inmate Scarborough's statement, he asserts that when he was writing his witness statement, a correctional officer told him to write "4 or 5 words, not a book," so he wrote only two or three sentences (*see* Doc. 1, Ex. C).  Scarborough also asserts he would have written more, but he was not sure of the incident that he was a witness to, and he was concerned he would suffer retaliatory treatment for writing a witness statement on Petitioner's behalf (*id.*).  The statements of Inmates Brown, Jenkins, and Daniel are virtually identical to Scarborough's (*id.*).  Additionally, Inmate Daniel asserts the Sgt. McClamma snatched the pen from his hand as he wrote his witness statement (*id.*).

Initially, Petitioner has failed to show how the investigating officer's delegation of duties violated the procedural protections required by <u>Wolff</u>, and Petitioner has failed to show how the manner in which the witness statements were collected denied him the opportunity to present evidence in support of his defense.  Petitioner does not allege the DOC failed to obtain or present the witness statements he requested.  Additionally, although the witnesses state they would have written more if given more time, none of them allege what they would have written, let alone that the additional information would have supported Petitioner's defense.  Furthermore, the record shows Inmate Daniel, the witness who alleged that the pen was snatched from his hand, had submitted a written witness statement on July 22, 2002, the day before the collecting of the witness statements in the woods (*see* Doc. 6, Composite Appx. 4).  Daniel does not allege he was in any way inhibited from writing a full statement on July 22nd, therefore, Petitioner has again failed to show how the manner of collecting the witness statements denied him the opportunity to present his defense.  Accordingly, he is not entitled to federal habeas relief on this claim.

      4.      <u>Failure to provide adequate written statement of evidence relied upon;</u> <u>insufficient evidence to support conviction</u>

Petitioner next contends the record is devoid of evidence to support his conviction. Petitioner argues the written decision of the disciplinary team states the conviction was based upon Officer Tyus' statement, but then mischaracterizes the statement.

The written decision of the disciplinary team states the conviction was based upon the following:

> . . . Officer Tyus' statement in section 1 that she gave inmate Anderson two direct orders to move up in line and get water.  He continued to stay at the water cooler and failed to comply with her order.

(Doc. 6, Appx. 5).  Officer Tyus' statement in section I of the notice of charge states:

> On July 15, 2002, at approximately 2:30 PM while supervising inmates on the field force squad south of highway 90 in the pea field, I, Officer Tyus, gave Inmate Anderson, Michael DC # 817928 a verbal order to get his water and move up in line. Inmate Anderson continued to stay at the water cooler after being given a second verbal order to move.

(Doc. 6, Appx. 1).  Petitioner contends the disciplinary team's finding that Petitioner was twice ordered to move up in line and get water, and that he failed to comply with that order by being at the water cooler and not back in line, is inconsistent with Officer Tyus' statement that she told Petitioner to get his water and move up in line, and then issued a second order to move.  Because Officer Tyus' statement does not match the evidence cited by the disciplinary team, Petitioner argues, no evidence exists to support the conviction.

<u>Wolff</u> does not require that the written decision contain a verbatim recitation of the evidence relied upon by the decisionmaker.  The constitutional basis for requiring a written statement of the evidence relied upon by the decisionmaker is to protect the inmate against collateral consequences, such as transfer to another institution or denial of parole, based on a misunderstanding of the nature of the original proceeding.  <u>Wolff</u>, 418 U.S. at 565.

The written decision provided by the disciplinary team in the instant case was sufficient to determine the nature of the proceeding, the nature of the infraction, and the evidence upon which the disciplinary team based its decision; thus, the decision passes constitutional muster. Additionally, the statement of Officer Tyus constitutes "some evidence" to support the charge, as required by <u>Hill</u>.  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

     5.    <u>Failure to supply written reason for disciplinary action</u>

Petitioner alleges the disciplinary team failed to state the reason it chose the forfeiture of gain time and placement in disciplinary confinement as punishment for the disciplinary violation.  He contends <u>Wolff</u> required the team to state the reasons it chose that particular penalty.

The purpose of the requirement that the disciplinary team provide a written statement of the reasons for taking the disciplinary action itself is to help ensure that prison administrators, faced with possible scrutiny by state officials, the public, and the courts, will act fairly.  <u>Wolff</u>, 418 U.S. at 565  In the instant case, the written decision of the disciplinary team fulfilled the purpose set forth in <u>Wolff</u> -- it explained that the reason for forfeiture of 30 days gain time and placement in disciplinary confinement for 30 days was Petitioner's disobeying Officer Tyus' order.  Furthermore, the punishment imposed was within the range proscribed by DOC regulations for that particular infraction.[4]  Therefore, Petitioner has failed to establish a due process violation.

IV.    CONCLUSION

Petitioner has failed to establish that the state court decision was contrary to or an unreasonable application of Supreme Court law.  Indeed, the record shows Petitioner was afforded fundamental fairness in the disciplinary proceedings.  Petitioner was afforded the procedural safeguards enunciated in <u>Wolff</u>.  Furthermore, as discussed *supra*, the record contained "some evidence" to support the conclusion that Petitioner committed the rule violation.  *Cf.* <u>Hill</u>, 472 U.S. at 456, 105 S.Ct. at 2774 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); <u>Rudd v. Sargent</u>, 866 F.2d 260, 262 (8th Cir. 1989) (prisoner failed to show that he was denied due process in disciplinary proceeding; statements in prison official's written disciplinary report constituted "some evidence" to support conclusion that inmate committed violation; although official did not witness the violation and victim's statements included in the report might be considered inadmissible hearsay at a criminal trial, full panoply of rights due a defendant in a criminal trial did not apply to prison disciplinary proceeding); <u>Brown v. Frey</u>, 807

---

[4]The DOC regulations provide a maximum penalty of forfeiture of 60 days gain time and placement in disciplinary confinement for 30 days for disobeying an order given by a staff member.  *See* Fla. Admin. Code Ch. 33-601.314, Section 6-1.

F.2d 1407, 1414 (8ᵗʰ Cir. 1986) (witnessing officer's violation report is "some evidence").

Accordingly, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) challenging the disciplinary conviction dated July 23, 2002 (disciplinary report log number 102-020668) be **DENIED**, and that the clerk be directed to close the file.

At Pensacola, Florida this 24ᵗʰ day of May, 2005.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11ᵗʰ Cir. 1988).**